IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| JUAN MOLINA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. C-05-327 |
| | § | |
| EQUISTAR CHEMICALS, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant's Motion for Summary Judgment (D.E. 24). For the reasons stated herein, the Court GRANTS Defendant's Motion.

## I.   JURISDICTION

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## II.   PROCEDURAL BACKGROUND

Plaintiff Juan Molina ("Plaintiff") filed suit on July 8, 2005, pursuant to Title VII of the Civil Right Act of 1964, as amended, and Chapter 21 of the Texas Labor Code, alleging discrimination on the basis of national origin and retaliation for reporting discrimination against his former employer, Defendant Equistar Chemicals, L.P. ("Defendant"). (See D.E. 1.)   In particular, plaintiff claims that he and fellow Hispanic coworkers

were treated less favorably than similarly situated Anglo workers. He claims further that, once he complained about the disparate treatment to his supervisor, he was wrongfully terminated.  He is seeking reinstatement, lost past wages and benefits, lost future wages and benefits in lieu of reinstatement, and compensatory damages.

On April 14, 2006, Defendant filed its Motion for Summary Judgment,(D.E. 13), and on May 4, 2006, Plaintiff filed his summary judgment response(D.E. 14).  Subsequently, on May 18, 2006, the Court struck Defendant's summary judgment motion for failure to comply with Local Rule 10.2 and this Court's General Order (D.E. 11), because the courtesy copy contained two-sided exhibits(D.E. 15).  Defendant was granted leave to refile its Motion for Summary Judgment (D.E. 23), which it did on June 20, 2006 (D.E. 24). Reference herein is to Defendant's properly filed summary judgment motion (D.E. 24).

### III.   SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of its motion for summary judgment, Defendant offers the following evidence:

Ex. A:    Deposition of Juan Molina;

Ex. A-1:  Plaintiff's Charge of Discrimination directed to the Texas Commission on Human Rights;

Ex. A-2:  Decision Making Leave ("DML") Memorandum dated November 8, 2002;

Ex. A-3:  Last Chance Agreement ("LCA") between Defendant and

Plaintiff (unsigned);

Ex. A-4:  Defendant's Business Ethics and Conduct Policy; and

Ex. B:    Affidavit of Albert Hesseltine, Shift Supervisor.

See D.E. 24, attached exhibits.

In response, Plaintiff offers:

Ex. 1:   Declaration of Juan Molina;

Ex. 2:   Copy of November 8, 2002 DML Memorandum;

Ex. 3:   Copy of LCA; and

Ex. 4:   Letter dated April 22, 2005, from Defendant's
         General Counsel, William Beteet, to Marie E. Minks
         of the EEOC, responding to EEOC charge.

D.E. 14, Exhibits 1-4.

The following facts are not in dispute:

Plaintiff began working in the Maintenance Department of a petrochemical plant in 1980.  (Pl.'s Decl. at 1.)  Defendant acquired the plant in 1998, and Plaintiff became an employee of Equistar Chemicals, working as an Operator in the Utilities area of the plant.[1]  (Id.)  Albert Hesseltine was Plaintiff's supervisor during all relevant times in this suit.  (Pl.'s Dep. at 24-25.) Plaintiff was a competent and knowledgeable Operator.  (Hesseltine Aff't at ¶ 3, 7.)

On August 3, 2002, Plaintiff called in sick following a five-week vacation.  (Pl.'s Decl. at 2.)  That same evening, he injured

_____

[1] During his employment with Equistar, Plaintiff concurrently owned a trucking business, J.M. Molina, Inc.  (Pl.'s Dep. at 6-7.)

his fingers working on a truck, and so he did not report to work the next day (Id.)  He was released back to light duty work some time in October, 2002; however, Mike Peterson, the Human Resources Director, told him there was no light duty work available.  (Id.) Plaintiff did not return to work until November 8, 2002.  (Id.)

Upon his return to work, Plaintiff was advised in a Decision Making Leave ("DML") Memorandum dated November 8, 2002, from supervisor Hesseltine and another supervisor, Charles Spivey, that his behavior was inappropriate and that he did not meet Defendant's Basic Elements and Business Ethics and Conduct Policy. (D.E. 24, Ex. A-2; A-4.) In particular, Plaintiff was reprimanded for: (1) making sarcastic, caustic remarks to co-workers, in front of peers, co-workers and contractors;(2) being absent and late without excuse; (3) being moody and displaying a negative attitude, and (4) being disrespectful to management openly, in front of other employees. (D.E. 24, Ex. A-2; D.E.14, Ex. 2.)  The DML Memorandum specifically provided that, to retain employment, Plaintiff must make a written commitment to change his objectionable behavior. (Id.)  It provided further that, if he failed to comply with the agreed upon commitments, disciplinary action, including termination of employment, would result.  (Id.) Plaintiff was sent home with pay for two days to contemplate the DML Memorandum.  (Pl.'s Dep. at 60-61.)

Plaintiff returned to work on November 10, 2002, and opted to

4

continue his employment. (D.E. 24, Ex. A-2; D.E.14, Ex. 2.)  He executed the DML document, and provided commitment statements in response to specific questions about his behavior. (Id.)

Initially, Plaintiff made a positive change in his conduct, attendance, and timeliness following the November 2002 DML event. (Hesseltine Aff't at ¶ 4.)  However, after some time, Hesseltine observed that Plaintiff was not following safety requirements and failing to submit certain job observations and REECH cards. (Pl.'s Dep. at 58-59; Hesseltine Aff't at ¶ 4.) Hesseltine discussed these issues with Plaintiff and reminded him that he was on DML and could be discharged if the problems persisted.  (Hesseltine Aff't at ¶ 4.)

In January 2004, Hesseltine observed Plaintiff inside the caustic area without his goggles.  (Pl's Decl. at 5). Hesseltine told Plaintiff that he could be fired for that mistake. (Id.) Plaintiff responded that everyone had made that mistake at one time or another and had not been terminated, and he asked how long he was to be on DML probation. (Id.)  He then requested a meeting with Mike Peterson and Jim Meas, the site production Superintendent. (Id.) The meeting was held that same afternoon. (Id.) No one could tell Plaintiff how long he was to remain on DML.  (Id.)

Plaintiff missed some work in January 2004 due to illness. (Pl's Decl. at 6.) In mid-February 2004, Hesseltine met with Plaintiff and advised him that his work attendance was

5

unacceptable, and stated that, in the future, he must have an excused absence from a medical doctor. (Hesseltine Aff't at ¶ 5.) Plaintiff missed worked on February 7 and 8, but did not have a doctor's excuse because it was the weekend. (Pl.'s Decl. at 6.) He missed worked April 22, 27-30 due to kidney stones, and he furnished a doctor's excuse. (Id.) He missed work on May 13-15, and provided a doctor's note. (Id.) He missed work May 29-30, but it was the weekend and he used antibiotics that he had gotten earlier, so he did not have a doctor's excuse. (Id.)

On August 3, 2004, Plaintiff attended a meeting with Hesseltine and Mike Peterson and was given the Last Chance Agreement ("LCA"). (Pl.'s Decl. at 8; Pl.'s Dep. at 72-73; D.E. 24 Ex. A-3.) The LCA noted that Plaintiff had been placed on DML for failure to meet expectations in the Defendant's Basic Elements and Business Ethics and Conduct Policy, had been suspended with pay on November 8 and 9, 2002 to consider the allegations and conditions set forth in the DML Memorandum, and had returned to work on November 10, 2002, agreeing to the terms and commitments set forth in the DML Memorandum. (D.E. 24, Ex. A-3). The LCA also noted that Plaintiff had: (1) missed twelve workdays from February 2004 through May 2004; (2) failed to complete a required computer-based safety exam for April 2004; and (3) failed to attend a June 21, 2004 Shift Training session. (D.E. 14 Ex. 3 at 1.)

The LCA provided further:

6

>This [A]greement shall be for a period of two (2) years,
>during which time the EMPLOYEE shall fully comply with
>all the rules and regulations of the COMPANY, and shall
>perform his assigned duties and responsibilities in a
>professional manner, to the satisfaction of the COMPANY.
>
>. . . [Further, the] COMPANY has advised and encouraged
>[the EMPLOYEE] to discuss all aspects of this Agreement
>with his private attorney . . . . [The] EMPLOYEE . . .
>has a period of at least twenty-one (21) days to consider
>this Agreement . . . .

(D.E. 14, Ex. 2; D.E. 24, Ex. A-2.)

When presented with the LCA, Plaintiff said, "I don't work here no more . . . because I'm not signing [the Agreement]." (Pl.'s Dep. at 82.)  Shortly after the meeting, Plaintiff related to his coworkers that he had quit. (Pl.'s Dep. at 82-83.)  He then went to his work area, gathered his personal belongings, and left. (<u>Id.</u>)

## IV.  <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on

file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  Celotex Corp., 477 U.S. at 322; Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256(1986); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992).  The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party.  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).  Summary judgment is mandated if, after adequate time for discovery and upon motion, the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Id. at 322-23.  See also Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 257 (5th Cir. 2001).

## V.   DISCUSSION

**A.   Title VII Employment Discrimination.**

8

Plaintiff claims that he was the victim of discrimination based on his national origin (Hispanic). In particular, he claims that he was assigned to perform a disproportionate amount of "dirty" or less desirable tasks such as cleaning strainers and changing out distribution nozzles. He complains that he loaded more trucks when he was the "spare" or extra Operator, but Anglo Operators did not load for him. He points out that he was denied light duty work in October 2002 when he attempted to return to work after injuring his fingers but that an Anglo was given light duty work when he requested it. He claims that no Hispanic Operators were "stepped up" to leadership positions during a turnaround in 2004. He claims that during "lunch box" meetings, Anglo Operators sat on one side of the room while Hispanic Operators sat on the other, and positive remarks were directed to the Anglo Operators while negative comments were directed to the Hispanic Operators.

In addressing Title VII claims of national origin discrimination, a court must apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003); Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003). Under this framework, the burden lies initially with the plaintiff "to raise a genuine issue of material fact on each element of his prima facie case." Johnson, 351 F.3d at 621 (citing Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680 (5th Cir. 2001)). If the

plaintiff presents a prima facie case, "the defendant must then give a legitimate, nondiscriminatory reason for the employment decision." Id.  When the Defendant provides a nondiscriminatory reason for the employment decision, the burden shifts back to the plaintiff to "raise a genuine issue of material fact that shows the defendant's reason may be a pretext for discrimination." Id. Therefore, the summary judgment analysis must begin with the question of whether, viewing the evidence in the light most favorable to the Plaintiff, he has presented sufficient evidence to establish a prima facie case.

### 1.   Prima Facie Case

In order to establish a prima facie case of discrimination under Title VII, a plaintiff must prove that he was "1) a member of a protected class; 2) qualified for the position held; 3) subject to an adverse employment action; and 4) treated differently from others similarly situated." Abarca v. Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005) (citing Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001)).

Here, it is undisputed that Plaintiff satisfies the first two prongs of the test.  He is Hispanic, a member of a protected class, and he was qualified for the position of an Operator. (Hesseltine Aff't at ¶¶ 3, 7.) Plaintiff argues that he was forced to resign from his position as Operator because of the discrimination he suffered, and that his resignation constitutes an adverse

10

employment action.

### *Adverse employment action*

Fifth Circuit case law establishes that an adverse employment action consists of an *ultimate* employment decision such as hiring, granting leave, discharging, promoting, or compensating.   Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004); Roberson v. Game Stop, 152 Fed. Appx. 356, 361(5th Cir. 2005) ("[o]ur precedent is clear that adverse employment actions are ultimate employment decisions, not the day-to-day decisions made in the context of the employment relationship.").   A resignation is actionable as an adverse employment action only if the resignation amounts to constructive discharge.   Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001).

To prove a constructive discharge, a "plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." Brown, 237 F.3d at 566; see also Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 439-40 (5th Cir. 2005).   In determining whether a reasonable employee would feel compelled to resign, the court considers: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's

resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]." <u>Brown</u>, 237 F.3d at 566. A constructive discharge claim requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment. <u>Benningfield v. City of Houston</u>, 157 F.3d 369, 378 (5th Cir. 1998). It is necessary to examine the conditions imposed, not the employer's state of mind, and an employee does not need to prove that an employer subjectively intended to force the employee to resign. <u>Bourque v. Powell Elec. Mfg. Co.</u>, 617 F.2d 61, 65 (5th Cir.1980); <u>Hammond v. Katy Indep. Sch. Dist.</u>, 821 S.W.2d 174, 177 (Tex.App.--Houston [14th Dist.] 1991, no writ).

In this case, Plaintiff maintains that he was forced to resign. (Pl.'s Dec. at 9; <u>see also</u> Pl.'s Dep. at 83-84.) At the August 3, 2004 meeting, Plaintiff was advised that, in lieu of termination, he would have to sign the LCA and agree to not commit any of the violations contain in the November 8, 2002 DML Memorandum and to remain on probation for two years. (D.E. 14, Ex. 3.) In addition, any breach of the LCA could result in an irrevocable resignation with no appeal. (<u>Id.</u>) Plaintiff responded, "I don't work here no more . . . because I'm not signing that paper." (Pl.'s Dep. at 82.) Plaintiff testified about the circumstances under which his employment ended:

Defense Counsel:        And you quit?

| Plaintiff: | Yes, ma'am. |
| Defense Counsel: | And you told your coworkers, I quit. |
| Plaintiff: | Not quitting; forced to resign. |

(Id. at 83.)

The fact that Plaintiff was required to sign the LCA to remain employed does not amount to a constructive discharge. The LCA, rather than an intolerable condition, presents an opportunity for employees to continue to work on a probationary basis and gives them a final chance to meet performance standards to *avoid* termination. See e.g. Williams v. Simmons, 185 F. Supp. 2d 665 (N.D. Tex. 2001). Moreover, the fact that Plaintiff may have received a poor evaluation, faced termination, and was required to improve certain non-technical areas of his performance does not amount to a constructive discharge. See Haley v. Alliance Compressor, LLC, 391 F.3d 644, 650-52 (5th Cir. 2004) (insufficient to establish constructive discharge where the resigning employee was threatened with discharge, subjected to an overly severe performance plan and micromanagement by her superiors, and faced humiliation and ostracization from her peers); McKethan v. Texas Farm Bureau, 996 F.2d 734, 741 (5th Cir. 1993) (the resigning employee's embarrassment after being singled out and admonished at an awards banquet was not sufficient to show constructive discharge).

Similarly, the other conditions of which plaintiff's complains

13

are not so severe that a reasonable person would have felt it
necessary to resign.  For example, Plaintiff complains that during
the 2004 turnaround period, "no Hispanics stepped up as leader[s]
or supervisors;" and that the workers who were promoted "were all
white." (Pl.'s Dep. at 48.)  However, Plaintiff testified that he
did not believe he should have been stepped up or promoted at that
time. (Pl.'s Dep. at 50.)  Plaintiff complains that during lunch
box meetings, "[a]ll the white people sat to [one] side of the
supervisor, [and] all the Hispanics sat [on the other side.]"
(Pl.'s Dep. at 51.)  Again, however, Plaintiff admits that, other
than on a first-come, first-serve basis, nothing prevented him from
sitting on the same side of room with the Anglo employees. (Pl.'s
Dep. at 52.)

Plaintiff complains that he was given menial and degrading
work, and a greater number of "dirty" assignments than Anglo
employees, such as cleaning strainers, changing distribution
nozzles in the cooling tower, and loading trucks. (Pl's Decl. at
7.)  However, even if true, plaintiff admitted at his deposition
that these job assignments were within his job description. (Pl.'s
Decl. at 26-28.)  Moreover, Plaintiff admitted that he did not know
how frequently he was assigned such duties as compared to Anglo
employees. (Pl.'s Dep. at 28.)  Thus, even if Plaintiff was
assigned the less-desirable jobs more frequently than his Anglo
coworkers, it is well established that "[d]iscrimination alone . .

14

. is insufficient for a claim of constructive discharge." <u>Harvill</u>,
433 F.3d at 440; <u>see also</u> <u>Hunt v. Rapides Healthcare Sys., LLC</u>, 277
F.3d 757, 772 (5th Cir. 2001) (insufficient to establish
constructive discharge where the resigning employee had been placed
on a different shift accompanied by a loss in compensation and
benefits).

Plaintiff has not alleged or presented any evidence that he
was demoted, received a salary deduction, assigned to work under a
younger supervisor, badgered, harassed or humiliated by his
supervisors, offered early retirement or continued employment on
terms less favorable, or any other condition that Fifth Circuit
case law has classified as characterized as so intolerable to
constitute a constructive discharge.  <u>See</u> <u>Brown</u>, 237 F.3d at 566.
Further, his claim that he was not afforded light duty work in
October 2002, especially in light of the circumstances surrounding
his absence (calling in sick on his first day back at work after a
five week vacation and then getting injured that evening at his own
business, and not being available for another month), is
insufficient to establish constructive discharge.

The circumstances of which Plaintiff complains do not present
the severity or pervasiveness of harassment found in a hostile work
environment.  For example, the Fifth Circuit found constructive
discharge in <u>Stephens v. C.I.T. Group/Equip. Fin., Inc.</u>, 955 F.2d
1023, 1027-28 (5th Cir. 1992) where the resigning employee had not

only been demoted, but also faced significant reductions in salary and responsibilities, and was repeatedly questioned by his younger successor and current supervisor as to when he was going to quit. In contrast, the Fifth Circuit did not find constructive discharge in Boze v. Branstetter, 912 F.2d 801, 805-06 (5th Cir. 1990) where the resigning employee suffered a poor performance evaluation and loss of responsibilities similar to a demotion.

Here, Plaintiff's complaints of being asked to perform duties that fall within his job description, not being promoted when he was not expecting to be, voluntarily selecting to sit where he desires at lunch-box meetings, and not being offered light duty work, do not begin to amount to a hostile work place, and as such, do not amount to constructive discharge. Similarly, the fact that Plaintiff was asked to sigh the LCA did not render working conditions so intolerable that a reasonable employee would feel compelled to resign. Accordingly, Plaintiff fails to satisfy the third prong of the prima facie test for discrimination.

### *Disparate treatment.*

Even assuming for summary judgment purposes that Plaintiff could establish an adverse employment action, he fails to meet the fourth prong of the prima facie test for discrimination, disparate treatment.

In order to show disparate treatment, a plaintiff must demonstrate "that the misconduct for which [he] was discharged was

16

nearly identical to that engaged in by an employee not within [his] protected class whom the [employer] retained." <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 221 (5th Cir. 2001) (quoting <u>Smith v. Wal-Mart Stores</u>, 891 F.2d 1177, 1180 (5th Cir. 1990)). The conduct at issue, however, is "not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment." <u>Id</u>. at 221 (citing <u>Wyvill v. United Cos. Life Ins. Co.</u>, 212 F.3d 296, 304-05 (5th Cir. 2000)); <u>see</u> <u>also</u> <u>Bryant v. Compass Group USA Inc.</u>, 413 F.3d 471, 478 (5th Cir. 2005) (no reasonable jury could conclude that "the alleged theft of alcohol, party decorations, and table decorations" is the "same as stealing money from a client's gift table at a catered event"); <u>Wyvill v. United Companies Life Ins. Co.</u>, 212 F.3d 296, 305 (5th Cir. 2000) (employees were not similarly situated where they held different jobs and "[m]ost importantly, the decision-makers who disciplined" the employees were different).

    Here, Plaintiff was first placed on DML due to his absences, tardiness and disrespectfulness to management and coworkers. He was then presented with the LCA because of his excessive absenteeism, failure to complete an exam, and failure to attend a training session. Plaintiff claims that he missed twelve workdays because he was ill, and that other employees in the Operations Department who missed work because of illnesses were not

17

terminated.  (Pl.'s Resp. at 6.)  According to Plaintiff, Eddie De La Paz was absent from "July 17 through December 13" because of a kidney infection, and Mario Gutierrez was out sick for "two months;" yet, they were retained.  (Id.)  Plaintiff, however, has not alleged or  provided any evidence showing that these employees are not within his protected class.[2]  (See id.)  Second, Plaintiff admitted that he knew the deadline to take the computer-based exam was April 30, 2004, but he was "busy that day," therefore he completed the exam on May 1, 2004 and "was one day late."  (Pl.'s Dep. at 79.)  Plaintiff fails to provide evidence that an employee outside of his protected class missed a similar exam and was retained.  Lastly, Plaintiff explained that he missed the Shift Training session because "[it] was [on] the day before [he] was scheduled to go on vacation," and he thought he could "[go to] the makeup session."  (Pl.'s Dep. at 80-81.)  Yet Plaintiff fails to present any evidence demonstrating that he was treated differently than a non-Hispanic employee who missed a Shift Training session. Accordingly, Plaintiff fails to satisfy the fourth prong of the prima facie test for discrimination.

## 2.    A Legitimate, Non-Discriminatory Reason.

Assuming, for purposes of summary judgment, that Plaintiff can

---

[2] Although Plaintiff alleges that he was the only Hispanic in his shift, he has not alleged or provided evidence showing that he was the only Hispanic in the Operations Department.

establish a prima facie case of discrimination, he nonetheless has failed to raise a genuine issue of material fact that Defendant's non-discriminatory reasons were merely pretextual and that discrimination was the true reason for the employment action. <u>See</u> <u>Abarca</u>, 404 F.3d at 941.

In establishing pretext, a "plaintiff cannot succeed by proving only that the defendant's proffered reason is pretextual. . . . Rather, a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." <u>Walton v. Bisco Indus., Inc.</u>, 119 F.3d 368, 370 (5th Cir. 1997); <u>see</u> <u>also</u> <u>Ramirez</u> <u>v. Landry's Seafood Inn & Oyster Bar</u>, 280 F.3d 576, 577 (5th Cir. 2002). To make a showing of pretext sufficient to survive summary judgment, the plaintiff "must put forward evidence rebutting *each* of the non[-]discriminatory reasons the employer articulates." <u>Ramirez</u>, 280 F.3d at 577 (emphasis in original).

On August 3, 2004, Defendant presented Plaintiff with the LCA to provide him with a last chance to correct what Defendant considered to be Plaintiff's continuing performance deficiencies. (D.E. 24, Ex. A-3.) In addition to the problems noted in the November 2002 DML, the LCA listed absences, failure to take a safety test, and failure to attend a training session. (<u>Id.</u>) Plaintiff does not suggest that any of these reasons are pretext, and in fact, admits (1) he missed twelve days of work because of

19

illnesses, (2) he "was one day late" in completing the computer-based exam, and (3) he missed a Shift Training session because he thought he could make it up later. (Pl.'s Dep. at 79-81.)   Thus, Plaintiff fails to show that the three non-discriminatory reasons Defendant stated in the LCA were false.

Similarly, Plaintiff has failed to present evidence that discrimination was the real reason for Defendant's employment action.   Plaintiff's subjective belief that his national origin motivated Defendant's employment action is insufficient. <u>Little v. Republic Refining Co., Ltd.</u>, 924 F.2d 93, 96 (5th Cir. 1991) (noting that the Fifth Circuit is "not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief."); <u>Grimes v. Texas Dep't of Mental Health & Mental Retardation</u>, 102 F.3d 137, 141 (5th Cir. 1996). Plaintiff must offer evidence to "suggest that impermissible discrimination underlies" the employment action.   <u>Walton</u>, 119 F.3d at 372. Plaintiff's evidence "to rebut the employer's reasons [must be] substantial, [otherwise] a jury cannot reasonably infer discriminatory intent." <u>Id.</u>   In this case, Plaintiff has not offered any evidence tending to show that Defendant's action was motivated by discriminatory reasons.

Accordingly Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claim is granted.

**B.   Title VII Retaliation.**

20

Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, ___ S. Ct. ___, 2006 WL 1698953, at *5 (June 22, 2006) (<u>citing</u> 42 U.S.C. § 2000e-3(a)). To make out a prima facie case of retaliation, a plaintiff must show "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action." <u>Perez v. Region 20 Educ. Serv. Ctr.</u>, 307 F.3d 318, 325 (5th Cir. 2002); <u>see also</u> <u>Gee v. Principi</u>, 289 F.3d 342, 345 (5th Cir. 2002). Once a plaintiff meets his prima facie burden in a retaliation claim, the Court employs the same burden-shifting approach as used in a discrimination claim. <u>See</u> <u>Perez</u>, 307 F.3d at 325.

Plaintiff claims that on June 23, 2004, he complained to Hesseltine that he was being discriminated against because he is Hispanic. He recalls that: "Hesseltine told [him] that he did not mean to do [it] intentionally, but maybe he was doing it subconsciously." (Pl.'s Decl. at 7; <u>see also</u> Pl.'s Dep. at 45.) Then from June 26, 2004 to August 1, 2004, Plaintiff was on vacation. On August 3, 2004, he was asked to attend a meeting and was presented with the LCA. Plaintiff argues that, because there

21

were only five working days "between the report and the termination," he has shown a causal connection between the protected activity (reporting the alleged discrimination) and the adverse employment action.  (Pl.'s Resp. at 19.)

The Fifth Circuit has held that "[t]he closeness in time between the protected activity and the adverse employment action could create a genuine issue of fact as to whether there was a causal connection."  Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 995 (5th Cir. 2005) (citing Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997)("[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation")).  However, Plaintiff's retaliation claim fails because he has not provided any evidence showing that he suffered an adverse employment action.  In other words, Plaintiff has provided no evidence that "[Defendant's alleged] action . . . might have dissuaded a reasonable [employee] from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co., 2006 WL 1698953, at *10.  As Supreme Court has noted, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Id.

Plaintiff maintains that the relevant adverse employment

22

action for his retaliation claim is his August 3, 2004 termination. However, as the record reveals, Plaintiff was not terminated, rather, he resigned. (Pl.'s Aff. at 9.) The issue therefore is whether requesting Plaintiff to meet with his superiors and presenting Plaintiff with the LCA constitutes an adverse employment action, such that a reasonable employee might be dissuaded from making a charge of discrimination. Burlington N. & Santa Fe Ry. Co., 2006 WL 1698953, at *10. Unlike the recent Burlington case where the Court found that reassignment and suspension without pay constituted an adverse employment action in a Title VII retaliation action, Plaintiff in this case was not reassigned or suspended, he was merely asked to attend a meeting and was given the LCA at the meeting. See id. at 11; see also Dunn v. Washington County Hosp., 429 F.3d 689, 693 (7th Cir. 2005) ("Talk is cheap; unless [Plaintiff] knew that [Defendant] had sabotaged the career of other nurses, his statements[, even if made in a nasty and uncivil tone,] would not have dissuaded reasonable persons from protecting their own rights under the statute and thus cannot violate Title VII."); Hottenroth v. Slinger, 388 F.3d 1015, 1030 (7th Cir. 2004) ("It is well established that unfulfilled threats that result in no material harm cannot be considered an adverse employment action under Title VII."). Plaintiff admitted that during the meeting he read the LCA, including its provisions that he was advised and encouraged to consult an attorney and that he was given 21 days to

23

consider the Agreement.   (Pl.'s Dep. At 76-78.)   Plaintiff
nonetheless resigned at the meeting.  As such, Plaintiff has failed
to raise a genuine issue of material fact that he had suffered an
adverse employment action.

Moreover, as noted, Plaintiff has not made a showing of
pretext sufficient to survive summary judgment, as he has not
provided evidence showing that the non-retaliatory reasons
Defendant stated in the LCA were false or that Defendant's action
was motivated by discriminatory reasons.  See Walton, 119 F.3d at
370.

Accordingly, Defendant's Motion for Summary Judgment as to
Plaintiff's retaliation claim is granted.

**C.   State law claim.**

Plaintiff's Texas Commission on Human Rights Act
("TCHRA")claims are analyzed in the same manner as claims brought
under Title VII precedent.  Wallace v. Methodist Hosp. Sys., 271
F.3d 212, 219 (5th Cir. 2001); Shackelford v. Deloitte & Touche,
LLP, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing
claims under the TCHRA and Title VII is identical.").  Thus, based
on the same reasoning set forth above, Defendant is granted summary
judgment in its favor on plaintiff's TCHRA claims.

## VI.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's

24

Motion for Summary Judgment (D.E. 24).  Plaintiff's claims against

Defendant are denied with prejudice.

SIGNED and ENTERED this 30th day of June, 2006.

Janis Graham Jack
United States District Judge